UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JOSEPH SANSOM and
STANLEY BOND,                                                                              PLAINTIFF
TRUSTEE IN THE BANKRUPCTY FOR THE
ESTATE OF JOSEPH SANSOM, et al.

vs.                              Case No. 4:23-CV-567-DPM

KIA CORPORATION f/k/a
KIA MOTORS CORPORATION;
KIA AMERICA, INC. f/k/a KIA
MOTORS AMERICA, INC.;
and JOHN DOES 1-3                                                                        DEFENDANTS

## AMENDED COMPLAINT

Comes now the Plaintiffs Joseph Sansom and Stanley Bond, as trustee in the Bankruptcy for the Estate of Joseph Sansom and Stephanie Sansom, by and through their undersigned attorneys, Paul Byrd Law Firm, PLLC, who brings this Amended Complaint against the Defendants, alleges and states:

### I. INTRODUCTION

1. This personal injury lawsuit arises from an incident at Crain Kia of North Little Rock d/b/a Crain Kia of Sherwood (hereinafter referred to as "Crain Kia") located at 5830 Warden Rd, Sherwood, AR 72120 on June 19, 2020. Joseph Sansom was working at Crain Kia and performing work on a 2012 Kia Soul (VIN # KNDJT2A55C7437392). While there, working on the vehicle, Sansom encountered an unreasonably sharp piece of metal known as a dash support bracket, slicing his arm open, which caused very serious and permanent injuries to Mr. Sansom. Plaintiff Stanley Bond, as trustee for Joseph Sansom, brings this claim

pursuant to Arkansas state law seeking remedy for the damages Joseph Sansom has suffered as a result of Defendants' negligence and recklessness.

## II. PARTIES

2. Plaintiffs incorporate by reference herein the preceding paragraphs as though stated word-for-word.

3. Joseph Sansom is an adult, resident citizen of Arkansas and has been a resident citizen of the State of Arkansas at all material times referred to herein.

4. Defendant Kia Corporation f/k/a Kia Motors Corporation ("KC") is a foreign corporation doing substantial business in the State of Arkansas. KC's corporate headquarters is located in Seoul, South Korea. Because Korea is a signatory to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matter (the Hague Convention), Defendant KC may be served with process by having a Korean translated copy of this Complaint served upon KC at its principal place of business in Seoul, South Korea through the channels authorized under the Hague Convention. KC may also be served with this Complaint by serving a second original copy upon its subsidiary and agent, Defendant Kia America, Inc., f/k/a Kia Motors America, Inc. as set out below. At all times pertinent to this Complaint, Defendant KC was and is in the business of designing, manufacturing, marketing, promoting, advertising and/or selling motor vehicles, including the vehicle known as the 2012 Kia Soul. Defendant KC transacts business in Arkansas either alone and/or by and through its affiliated subsidiaries and derives substantial revenue from business in the State of Arkansas.

5. Defendant Kia America, Inc., f/k/a Kia Motors America, Inc. ("KA") is now and was at all times material hereto a foreign corporation headquartered at 111 Peters Canyon Rd., Irvine, California 92606, and is licensed to do business in Arkansas. KA's registered Agent for service of process is CT Corporation System, 124 West Capitol Ave., Suite 1900, Little Rock, Arkansas 72201.

6. Hereinafter, any reference to KIA shall be construed as referring collectively to Defendants Kia America, Inc. f/k/a Kia Motors America, Inc. and Kia Corporation f/k/a Kia Motors Corporation.

7. On July 2, 2024, Sansom filed a *Voluntary Petition for Relief*, under the Chapter 7 Bankruptcy Code.

8. Stanley Bond is the bankruptcy trustee for Joseph and Stephanie Sansom's bankruptcy estate and represents the interests of the entire body of Mr. Sansom's unsecured creditors.

9. The Original Complaint was filed in State court and the Defendants filed for removal. This case was properly removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 because KIA satisfied the procedural requirements for removal and this Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332(a).

## IV. FACTUAL ALLEGATIONS

10. Plaintiffs incorporate by reference herein the preceding paragraphs as though stated word-for-word.

11. On June 19, 2020, Sansom was working on a 2012 Kia Soul (VIN # KNDJT2A55C7437392) which had a dash support bracket (see picture below)

located under the dashboard. This dash support bracket was unreasonably sharp so that when Sansom pulled his hand out from underneath the dash, the dash support bracket lacerated his left wrist to the point of lacerating his extensor pollicis longus tendon.



### V. FIRST CAUSE OF ACTION - PRODUCTS STRICT LIABILITY

12. Plaintiffs incorporate by reference herein the preceding paragraphs as though stated word-for-word.

13. Defendants designed, manufactured, assembled, distributed, furnished, sold, and/or supplied the 2012 Kia Soul that is the subject of this Complaint in a defective and unreasonably dangerous condition.

14. Upon information and belief, the 2012 Kia Soul which is the subject of this action was expected to, and did, reach the user and/or consumer without substantial

change in the condition in which it was sold and was, at the time of the accident, in essentially the same condition as when it left the hands of these Defendants. However, even if Kia Soul had been altered in some fashion before causing injury to Plaintiff Joseph Sansom, the substitution of alternative component parts is well-known and foreseeable by the Defendants.

15. As stated in several particulars previously, the 2012 Kia Soul, as designed, manufactured, assembled, distributed, furnished, sold, and/or supplied by the Defendants, was in a defective condition and unreasonably dangerous to foreseeable users, including Plaintiff Joseph Sansom.  The 2012 Kia Soul was not reasonably safe when being used in a foreseeable manner but, to the contrary, was defective and unreasonably dangerous, both generally and in the placement of a unreasonably sharp dash support bracket underneath the dashboard.

16. The Defendants knew, or in the exercise of reasonable care, should have known the 2012 Kia Soul, as designed, manufactured, assembled, distributed, furnished, sold, and/or supplied was defective and unreasonably dangerous, and that a safer design was feasible and available.

17. The defects and dangers of the 2012 Kia Soul, which is the subject of the Complaint, were unknown to Joseph Sansom at the time he was injured.

18. As a direct and proximate result of the defective and unreasonably dangerous condition of the 2012 Kia Soul, Plaintiff Joseph Sansom was injured when the dash support bracket lacerated his left wrist and caused serious injury.

19. Pursuant to Arkansas Code Ann. § 16-116-101, Defendants are strictly

liable for all damages proximately caused by the defective and unreasonably dangerous condition of the 2012 Kia Soul that is the subject of this Complaint. The damages that Joseph Sansom suffered, *inter alia,* severe and permanent injuries, scarring and disfigurement, past, present, and future lost wages and loss of earning capacity, conscious physical and emotional pain, suffering and mental anguish, past, present, and future medical costs, including care-taking expenses, and other damages in excess of the amount required for federal diversity jurisdiction.

## VI. SECOND CAUSE OF ACTION - BREACH OF IMPLIED WARRANTIES

20. Plaintiffs incorporate by reference herein the preceding paragraphs as though stated word-for-word.

21. The defective and dangerous condition of the Kia Soul and lack of adequate warnings made it unfit for use, and unfit for the particular purpose.

22. Upon information and belief, the Kia Soul, which is the subject of this action was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of the accident, in essentially the same condition as when it left the hands of the Defendants. However, even if the Kia Soul had been altered in some fashion before causing injury to Plaintiff Joseph Sansom, the substitution of alternative component parts is well-known and foreseeable by the Defendants.

23. Plaintiff Joseph Sansom is a third party who would foreseeably use and/or be affected by the dash support bracket on the Kia Soul.

24. The Arkansas Code Annotated implies warranties of merchantability and fitness

for a particular purpose in the sale (§§ 4-2-314, 4-2-315) and leasing (§§ 4-2A-212, 4-2A-213) of goods, including the Kia Soul like the one that is the subject of this Complaint.

25. Defendants breached those implied warranties by selling and leasing a defective Kia Soul that violated the warranties of merchantability and fitness for a particular purpose.

26. As a direct and proximate result of the Defendants' breach of warranties and pursuant to § 4-2-715 and § 4-2A-520, Plaintiff Joseph Sansom was catastrophically injured and is entitled to an award of actual and consequential damages as previously set forth herein.

## VII. THIRD CAUSE OF ACTION - FAILURE TO WARN

27. Plaintiffs incorporate by reference herein the preceding paragraphs as though stated word-for-word.

28. Upon information and belief, the Kia Soul, which is the subject of this action was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of the accident, in essentially the same condition as when it left the hands of the Defendants. However, even if Kia Soul had been altered in some fashion before causing injury to Plaintiff Joseph Sansom, the substitution of alternative component parts is well-known and foreseeable by the Defendants.

29. The Defendants had a duty to provide adequate warnings and information to foreseeable users, such as Plaintiff Joseph Sansom, about the dangers of the Kia Soul's design and manufacture, as well as the likelihood that it was or could

have easily been reassembled and/or modified.

30. As a direct and proximate result of Defendants' failure to warn, Plaintiff Joseph Sansom sustained serious injuries as previously set forth herein and is entitled to an award of actual damages in an amount to be determined by the trier of fact.

31. The Defendants' failure to warn users and consumers of a known and serious risk of harm from the use of the product was reckless, willful, wanton, heedless, and in flagrant disregard to public safety.   As a result, Plaintiff Joseph Sansom is entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

## VIII. FOURTH CAUSE OF ACTION - NEGLIGENCE

32. Plaintiffs incorporate by reference herein the preceding paragraphs as though stated word-for-word.

33. The Defendants had a duty to properly and safely design, test, manufacture, maintain, and inspect the Kia Soul that is the subject of this Complaint, and a duty to place a reasonably safe 2012 Kia Soul into the stream of commerce.

34. Upon information and belief, the 2012 Kia Soul which is the subject of this action was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of the accident, in essentially the same condition as when it left the hands of the Defendants. However, even if the Kia Soul had been altered in some fashion before causing injury to Plaintiff Joseph Sansom, the substitution of alternative component parts is well-known and foreseeable by the Defendants.

35. The Defendants knew or should have known that the Kia Soul was inherently dangerous, and was defective as previously set forth herein.

36. The Defendants had a duty to warn Plaintiff Joseph Sansom as to any defects of the Kia Soul that is the subject of this Complaint.

    I. The Defendants violated their duties and were careless, negligent, grossly negligent, reckless, willful, and wanton, in the following particulars:
    II. In designing, manufacturing, and placing into commerce an unsafe vehicle with a high risk of injury;
    III. In failing to properly and adequately design, test, and manufacture the Kia Soul;
    IV. In failing to design, manufacture, and sell a vehicle that could be safely used, despite the fact that such assembly designs were technologically and economically feasible;
    V. In failing to have discovered that the vehicle was defective;
    VI. In failing to properly inspect, maintain, and assemble the vehicle that is the subject of this Complaint;
    VII. In allowing a defective and/or inherently dangerous part to be in place while Plaintiff Joseph Sansom was working as a mechanic on the vehicle;
    VIII. In placing the defective and unsafe vehicle into the stream of commerce without adequate warnings, while knowing that the product would be sold and/or loaned and/or leased to and used by persons in the road mechanic industry, thereby exposing them and other third parties to a high and unreasonable risk of injury without adequate warnings; and
    IX. In failing to create and provide sufficient warnings as to the dangerous propensities of the vehicle.

37. As a direct and proximate result of the carelessness, negligence, gross negligence, recklessness, willfulness, and wantonness of the Defendants, Plaintiff Joseph Sansom was severely injured and is entitled to an award of actual and consequential damages as previously set forth herein.

38. The Defendants' conduct in designing, manufacturing, selling and placing an inherently dangerous product, with a known and serious risk of harm, into the

stream of commerce was reckless, willful, wanton, heedless, and in flagrant disregard to public safety. As a result, Plaintiff Joseph Sansom is entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

### IX. CAUSATION OF JOSEPH SANSOM'S INJURIES AND DAMAGES

39. Plaintiffs incorporate by reference herein the preceding paragraphs as though stated word-for-word.

40. The injuries and damages sustained by Joseph Sansom, more particularly described below, were produced in a natural and continuous sequence from the Defendants' violations of one or more of the above-described independent duties to use ordinary care for the safety of Joseph Sansom.

41. The injuries and damages sustained by Joseph Sansom were a probable consequence from the Defendants' violations of one or more of the above-described independent duties to use ordinary care for the safety of Joseph Sansom.

42. Defendants should have foreseen and anticipated that a violation of one or more of the above-described independent duties to use ordinary care and follow the safety rules would constitute an appreciable risk of harm to others, including Joseph Sansom.

43. If Defendants had not violated one or more of the above-described independent duties to use ordinary care and to follow the safety rules for the safety of Joseph Sansom, then Joseph Sansom's injuries and damages would not have occurred.

## X. COMPENSATORY DAMAGES SUSTAINED BY JOSEPH SANSOM

44. Plaintiffs incorporate by reference herein the preceding paragraphs as though stated word-for-word.

45. The injuries and damages sustained by Joseph Sansom as a result of Defendants' violations of one or more of the above safety rules, include, but are not limited to, the following:

    i. Serious and permanent bodily injuries to Joseph Sansom's body, including, but not limited to, a laceration of the left wrist including the extensor tendon, algoneurodystrophy, and complex regional pain syndrome, which is a life changing event causing Joseph Sansom to lose the ability to enjoy a normal quality of life;

    ii. Medical expenses incurred in the past and reasonably expected to be incurred in the future, and transportation expenses to obtain such medical treatment;

    iii. Physical pain and suffering experienced in the past and reasonably expected to be experienced in the future;

    iv. Loss of income in the past and reasonably expected to be experienced in the future;

    v. Loss of earning capacity due to permanent physical impairment from the injuries caused by the collision; and

    vi. Mental anguish experienced in the past and reasonably expected to be experienced in the future, which includes, but is not limited to, Joseph Sansom's loss of quality of life due to permanent injuries causing chronic pain that limits his activities.

## XI. AMOUNT OF DAMAGES

46. Plaintiffs incorporate by reference herein the preceding paragraphs as though stated word-for-word.

47. Joseph Sansom's injuries and damages are in excess of the minimum amount required for federal court jurisdiction in diversity of citizenship cases, for which Joseph Sansom should be awarded a judgment as against the Defendants in an amount to fully and fairly compensate him for each and every element of damages that has been suffered.

## XII. PUNITIVE DAMAGES

48. Plaintiffs incorporate by reference herein the preceding paragraphs as though stated word-for-word.

49. Joseph Sansom is entitled to recover punitive damages in accordance with Arkansas law, based upon the Defendants' complete indifference to and conscious disregard for the safety of Joseph Sansom and others, causing or contributing to catastrophic and permanent injuries. Defendants' wanton and reckless acts and omissions occurred under circumstances where their conduct, in total disregard of the consequences, would naturally and probably result in injury or damages to Joseph Sansom. Defendants knew or should have known, in light of the surrounding circumstances, that their conduct would naturally and probably result in catastrophic and serious injury, and continued this conduct with malice and wanton and reckless disregard for the consequences of its actions for which punitive damages should be awarded.

50. In addition to actual, special, consequential and compensatory damages,

Joseph Sansom demands a judgment against Defendants for punitive damages in an amount necessary and sufficient to deter Defendants from the above-described conduct and to punish Defendants for their willful, wanton, gross, flagrant, reckless, outrageous, and egregious conduct.

## XIII. DEMAND FOR JURY TRIAL

51. Plaintiffs incorporate by reference herein the preceding paragraphs as though stated word-for-word.

52. Plaintiffs demand a jury trial for all issues of fact presented by this action.

## XIV. RESERVATION OF ADDITIONAL CLAIMS

53. Plaintiffs incorporate by reference herein the preceding paragraphs as though stated word-for-word.

54. Joseph Sansom reserves the right to plead further upon completion of discovery to state additional claims and to name additional parties to this action.

WHEREFORE, Joseph Sansom prays that after a jury trial of this action that he be awarded the following:

    A.    A judgment against Defendants in such an amount that will fully and fairly compensate him for all of the above described damages and in an amount in excess of that required for federal court jurisdiction in diversity of citizenship cases;

    B.    A judgment and verdict against Defendants awarding exemplar or punitive damages as permitted by law;

    C.    All costs expended herein including attorneys' fees and any expert costs and fees as permitted by law;

    D.    A pre- and post-judgment interest award against

       Defendants to compensate for loss of money and to the extent of and for the reasons permitted by law; and

    E.    All other proper relief to which he may be entitled in the Premises.

Dated: September 10, 2024

          Respectfully submitted,

          By: */s/ Paul Byrd*
          **PAUL BYRD LAW FIRM, PLLC**
          Paul Byrd, Bar No. 85020
          Maryann Byrd, Bar No. 2015116
          415 North McKinley Suite 210
          Little Rock, AR 72205
          Telephone: (501) 420-3050
          Facsimile: (501) 420-3128
          paul@paulbyrdlawfirm.com
          maryann@paulbyrdlawfirm.com

          ***Attorneys for Plaintiff***