IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JOSEPH SANSOM and STANLEY BOND,
Trustee in the Bankruptcy for the Estate of
Joseph Sansom                                                              PLAINTIFFS

v.                              No. 4:23-cv-567-DPM

KIA CORPORATION, f/k/a KIA
MOTORS CORPORATION; KIA
AMERICA, INC., f/k/a KIA MOTORS
AMERICA, INC.; and JOHN DOES 1-3                              DEFENDANTS

ORDER

Each side in this products liability case moves to exclude all the other side's experts. The Court continues to work through which of Sansom's claims need a trial. The expert-related record issues need sorting first.

*

**1. Sansom's Motion to Exclude.** Sansom moves to exclude Kia's four proposed expert witnesses: Alan M. Dow, P.E. (product engineer); Britton Hill (automotive technician); Harry Pearce, P.E. (structure and design); and John McGann, Ph.D (physical chemist).

Almost all Dow's opinions are admissible. The Court has studied his report and deposition. His engineering methods and procedures pass *Daubert* muster. Doc. 80-E & 80-F; *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993). Dow relies on his extensive experience as a Kia engineer in forming his opinions about the 2012 Soul's design and manufacturing. Fed. R. Evid. 702 & advisory committee's note to 2000 amendment. The foundations of his opinions are thorough; any alleged cracks go to weight, not admissibility. *Robinson v. GEICO General Insurance Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006). Dow cannot testify, however, about who the intended "user" of the Kia was. *Doc. 80-E at 7*. That's a question of law for the Court. *Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003).

With one caveat, Hill's opinions are admissible, too. He's an experienced automobile repair technician. Hill reviewed industry safety standards, the repair procedure which Sansom performed, Sansom's background, and the 2012 Kia Soul. He can testify as an expert based on all this.

Hill also ran his bare hand along the dashboard bracket, and concluded that "the outboard dash bracket edges were not sharp to the touch." *Doc. 80-4 at 12*. This opinion is not specialized knowledge; anyone could do it and form a sensory impression. Fed. R. Evid. 702(a); *see, e.g., Lee v. Andersen*, 616 F.3d 803, 808–09 (8th Cir. 2010). But it is an admissible lay opinion. Fed. R. Evid. 701. The parties explored it in discovery, so there's no surprise-based prejudice. A witness may offer both expert and lay opinions. Fed. R. Evid. 701 & advisory committee's

note to 2000 amendment. The opinion would help the jury on the key factual dispute. Touch is a common sense way of judging sharpness. And notwithstanding the UL 1439 standard's helpfulness, touch captures all the circumstances here better. *Wactor v. Spartan Transportation Corp.*, 27 F.3d 347, 350–51 (8th Cir. 1994). And unlike in *Lee*, the jury can't judge the key disputed fact as well as the witness simply by sight. *Compare* 616 F.3d at 808–09. The Court will, however, give a cautionary instruction that Hill's touch opinion is a personal one, rather than an expert's conclusion.

Pearce's expert opinions also come in. Kia can probe and critique his methodology on cross-examination. *Robinson*, 447 F.3d at 1000. Like Dow, though, Pearce cannot say whether Sansom was a "user" of the Kia. Doc. 73-4 at 102; *Southern Pine*, 320 F.3d at 841. And like Hill, his experience touching the bracket is a lay opinion, not an expert opinion, which needs a limiting instruction given Pearce's expert hat.

Dr. McGann may offer his opinions, too. He examined CT images of caps used to test the sharpness of the dashboard bracket edge. (More on these test caps later.) Sansom challenges Dr. McGann's results as unreliable, saying there's no recognized methodology for examining testing caps using a CT scan. Sansom also argues that, due to elastic recovery, the CT scans of the test caps were too far removed in time from the sharpness testing to be reliable.

CT scanning is a well-established imaging technique for detecting internal anomalies. Dr. McGann's report, and Kia's briefing, cover this ground well. *Doc. 68-22 at 10–11 & Doc. 97 at 13–14.* Dr. McGann's methodology gets through the gate: It is reliable. *E.g., Singleton v. Arkansas Housing Authorities Property & Casualty Self-Insured Fund, Inc.,* 934 F.3d 830, 839 (8th Cir. 2019). The only seeming novelty presented is using the CT machinery to scan the sharpness-test caps. The lack of scientific literature specifically addressing CT scanning of these caps is not a death knell. Expert testimony applying established methods to new factual contexts can be admissible. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 151 (1999). Dr. McGann's use of CT scans is here. The test caps are a physical thing, which can be scanned. Last, Sansom can address the viscoelasticity issue on cross and through his elasticity expert.

*

**2. Kia's Motions to Exclude.** Kia moves to exclude Sansom's three proposed expert witnesses: Christopher Roche (vehicle design, development, testing, and manufacturing); Stan Andrews (accident reconstruction); and Francesca Cibotti (materials scientist).

Many of Roche's opinions are admissible. He has almost three decades of experience in vehicle design and safety. *Doc. 68-13 at 6–7.* Roche explained, in detail, how he reached his conclusions about the bracket's sharpness. *See Doc. 68-13 at 14–20.* His methodology was

sound; Kia's substantive disagreements with Roche's opinions go to their weight. *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 915–16 (8th Cir. 2017). And Roche's extensive experience allows him to testify about alleged manufacturing defects. *Adams*, 867 F.3d at 915.

Roche's warnings and human factors opinions, however, are excluded. These are not his areas of expertise. He provided generic thoughts rather than a rigorous analysis in either area. Of course an experienced design engineer has some knowledge about these areas. And the general principle—design out, guard, or warn—is unremarkable. But, Rule 702 requires more to ensure that an expert's conclusions are sufficiently well-footed.

With one exception, the opinions Roche expressed in his February and March reports are admissible rebuttal of Kia's experts' opinions. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758–59 (8th Cir. 2006). The exception is his analysis of Kia's design drawings. This was new ground because Sansom had not sought those drawings in time for him to consider them. While Kia deposed Roche again after all the reports were done, it would be unfair and prejudicial to allow a belated specific opinion from Roche about the drawings. Kia didn't have the opportunity to meet that opinion in its original round of expert reports. With a proper foundation, Sansom may offer the design drawings in his case-in-chief through another witness. But Roche cannot offer his proposed expert opinion based on them.

On the defect issue, while Sansom need not prove that his alternative proposed design was "available and feasible in terms of cost, practicality and technological possibility," he must show that a safer alternative design actually existed. *Dancy v. Hyster Co.*, 127 F.3d 649, 653–54 (8th Cir. 1997) (Arkansas law and quotation omitted). Roche so testified, drawing on his experience with vehicles that use magnesium cross car beam structures and extrusion profile guards. *Doc. 68-13 at 20–22 & Doc. 73-5 at 8.* That suffices. Kia can test the weight of this evidence on cross.

Stan Andrews's opinions about how Sansom cut his wrist are admissible. He's experienced in accident reconstruction. But he was not identified as an expert about, and doesn't have training in, manufacturing defects, design defects, or warnings. *Doc. 80-2 at 7–9 & Doc. 74-4.* The Court therefore limits Andrews's expert testimony to accident reconstruction. *Khoury v. Philips Medical Systems*, 614 F.3d 888, 893 (8th Cir. 2010).

There's one dispute about Andrews's reconstruction methodology. He used an exemplar vehicle—a 2013 Kia Soul, instead of the 2012 model that Sansom was working on. *Doc. 80-1 at 7–9.* There are some differences between the two, but the dash mounts and the frame beneath those mounts are identical. *Doc. 80-2 at 20–21.* Those facts make the model year difference of little weight.

-6-

Andrews may give his reconstruction opinions even though he used an exemplar vehicle.

Cibotti's opinions are admissible, too. She says that, due to viscoelastic recovery, the fifteen-month gap between when the test caps were cut and when they were scanned makes the CT scan results unreliable. Kia's objections to her testimony are overruled. Her methodology is sufficiently reliable, though subject to some criticism. Cibotti has more than a decade of experience in material science, and has published research in this area. *See generally Doc. 75-1 & Doc. 80-3 at 40–42.* She thoroughly explained how she came to her conclusions. *Doc. 75-1 at 5–10.* Her methodology may not have been perfect, but Kia can explore imperfections on cross and present its own expert testimony about the CT scans. *In re Prempro Products Liability Litigation*, 586 F.3d 547, 567 (8th Cir. 2009).

*

The parties' motions to exclude experts, Doc. 65 & 73–75, are mostly denied and partly granted as specified. One general admonition to all the experts: Avoid attempted testimony about applicable law.

So Ordered.

*[signature]*
D.P. Marshall Jr.
United States District Judge

6 January 2026